Our next case for argument is 20-2210 Spex Technologies v. Apricorn. Mr. Fenster, please proceed. Good morning, Your Honors, and may it please the Court, Mark Fenster for the appellant, Spex. The Court should reverse the Jamal order because the District Court improperly tested the sufficiency of the evidence against a new, post-verdict claim construction that was procedurally improper and substantively wrong under ODETX. Separately, the Court should also reverse the order finding the means for providing claims indefinite because this Court has already found on the identical record that the specification clearly linked structure to the recited means there. Can I just ask you as a matter of housekeeping, is it correct that that indefiniteness argument is something we have to address regardless of what we do with the other aspects of this case, meaning it's a stand-alone issue? I believe that's correct, Your Honor. First, as to the procedural defect in the Court's Jamal order, Jamal must be reversed because the District Court, contrary to this Court's holdings in Hewlett-Packard and Wyland, changed the claim construction materially from the jury instruction. I'm not sure that I see the change in the claim construction. You say, and this is in your yellow brief at page 19, that Toro holds that the indispensable component is a claim limitation. And that is largely the basis for your idea that there's been a change in the claim construction. I don't see that language in Toro. But would you show me where Toro says that if structure is indispensable, it becomes a, quote, claim limitation? So I see, to me, what happened here is that the issue that you're debating now about indispensability just wasn't addressed at all in the instructions. That's exactly right. So I don't understand how you get from Toro that indispensability is a claim limitation. Okay, so my understanding is that, in general, the rule is odetics. Odetics says, as the Court was instructed. The instructions pretty much came from odetics. That's right, and it's the overall construction. Individual subcomponents are not claim limitations. Further parsing is improper. That's how the Court has, how the jury was instructed. Can I just, I don't want to interrupt your chain of thought, but just to sort of amend or add to Judge Dyke's question. Odetics, Toro and Solomon are our precedent, decided after odetics. So what Toro and Solomon said with respect to either a significant claim limitation, they used several words other than indispensable. How can that be, what you seem to be saying is that that is inconsistent and contradicts the jury instruction that came out of odetics. That can't, well, you're only right if we've got precedent that's conflicting and inconsistent and contradictory. The inconsistency, Your Honor, is that the Court, the claim construction that the Court applied on JMAL required a specific showing of configuration registers. The jury was not so instructed. The jury instruction was that it's the interface control device, ICD. Are you agreeing now that there was no error in the claim construction? Not, the original claim construction we've never challenged. Post-JMAL, on JMAL, the post-verdict claim construction was new and different. Okay, so we're not dealing with a question of inconsistency between the original construction and the post-JMAL. I think that the procedural defect, Your Honor, is that... Answer that question. Are you arguing that there's an inconsistency between what he did on JMAL and the jury instruction? Yes, absolutely. I don't see that. Where would you please show me? And that rests, as I understand it, on your notion that indispensability is a claim limitation. I disagree, Your Honor. So the court instructed the jury... Let's look at this at a granular level. What supports your statement on 19 of the yellow brief that Toro holds that the indispensable component is a claim limitation? Where does Toro say that? Your Honor, in Toro, there was not a jury verdict. The court specifically held that CAM limitation was a specific claim limitation that had to be shown. I don't see the language in Toro. I don't see it saying that because something is indispensable, it becomes a separate claim limitation. Your Honor, respectfully, I think that that's not our point. Toro did... You said it in your brief. I'm just asking you to show me where the support for what you said in the brief. Your Honor, in Toro, the court specifically held at 1323. The court determined that the corresponding structure includes a mechanical CAM structure, and then... So there was a specific holding that the mechanical CAM structure was a claim limitation. Where? In this case, the jury was not instructed that... Where does Toro say that? I don't see that Toro says that when something becomes indispensable, that makes it a separate claim limitation. I don't see that language. It was just pointed to me, and I'll be satisfied. Your Honor, I don't... Let me just agree with you because it's not material to my point. I apologize if I misled you in the yellow brief. It's not material to the point. The material point here is that the district court on Jamal held for the first time that configuration registers had to be shown, and that was a material difference from the jury instruction, which did not reference configuration registers at all, specifically instructed the jury... Well, I think you said initially it contradicted. I think you used the word contradicted construction, and I think... Jamal... Again, my question, if you could just address sort of my question. I understand I interrupted Judge Dykes, so I'm not faulting you for doing it. Go ahead. But it seemed to me, and I think you even kind of said it today, the jury instruction comes out of odetics, and the indispensable central role greater weight comes out of Toro and Solomon. Those decisions, in my view, are consistent. They must be consistent. So how can you say that a jury instruction out of odetics is inconsistent and contradicts what is subsequently relied on coming out of Toro? Okay. So the district court did not hold as part of its claim construction originally that configuration registers were indispensable. Wait. Where is that? Where is the place where you think the district court instructed the jury as to the meaning of the interface control device and what language in the spec corresponds to the interface control device? Yes. So specifically at Appendix 11-276, the judge instructed... Hold on. Give me one second. Let's do it again. 11-276. I'm with you. Okay. The judge instructed the jury that the corresponding structure for the means for media... Okay. What line? I don't have the line. Is the interface control device 910 as shown in Figure 9b? Okay. Okay. Now... Now, wait. But did he or did he not somewhere, I mean, I haven't been through all of these jury instructions, but instruct the jury that they are obligated to look to the structure that performs the particular function? So he instructed them that the corresponding structure is interface control device 910, and then at 11-279 to 280, he specifically instructs the jury that the individual components... Yes, but see, here's my problem. My problem is the configuration registers are actually the only thing in Figure 9 which perform the function. That's not true. That's not true. So first of all... The testimony seems to be that that's true. Go ahead. That's not the case. This is an interface control device that routes data from the host through the security to the target. Now you're telling me what the interface control device does in a broad sense. What is the particular claimed function? Your Honor, you have to... What's the claimed function? The particular claimed function is that it must mediate the data so that it must pass through the security means. Okay? That's the function. But the configuration register is the only thing that does that. That's not true. The configuration registers allow it to be configured from one mode to another, but what routes the data is that three interface structure, ICD, which the jury was instructed, and instructed specifically that it's the overall structure. Configuration register determines whether it goes through the security feature, right? That's not true. The configuration registers just determine which mode that ICD functions in, but the ICD has data lines that route the data from the host to the security to the target. That's what does it. And the specification... I'm not talking about routing the data. We're talking about whether it goes to the security box or not. That's what I meant by routing the data, Your Honor. It has to go through the security in order to get to the target. And the specification at column 10 specifically says that it can be operated in multiple modes or it can be fixed at manufacturer to only operate in that mode. The configuration registers go to configure... If it's fixed so that it only operates in that mode, then the function's not being performed.  Your Honor, the jury was not instructed that configuration registers are essential. The jury instructions do not mention configuration registers at all. Are you giving up on your argument that there's a conflict between what he did and what the jury instruction was? Absolutely not. It is completely at odds. The jury was not instructed that configuration registers are required... In conflict with it, it just means that there's an issue here about indispensability that wasn't presented to the jury. It was never raised by... Maybe so, but there's no... I don't understand where the conflict is between the odetics instruction that he gave and what he did post-trial, which was consistent with Toro. Because in Wylan and HP, this court held... What language in the instruction was contradicted by what he did post-trial? The language was the specific language that the individual components are not claim limitations. The claim limitation is the overall structure of further deconstruction. That's correct, and Toro didn't change that. And your effort in the yellow brief to say that the indispensability is a claim limitation isn't consistent with Toro. My point, Your Honor, is that the judge on J-Mall specifically added a limitation that's inconsistent with the jury instruction. That's inconsistent with Wylan and Hewlett-Packard. They added the construction... Here's the problem. I don't think it's inconsistent, but here's why. Look at column 17, line 25 to 32. It's the only portion of the patent that addresses the functionality for the interface control device that is in the claim, the mediating instruction. This is the only place where you can find the structure. And the jury had the patent as part of this case when they were deciding it. And this says that the configuration of registers... In fact, it's the only thing they point to in the interface control device is what actually performs the function. That's not true. Okay, what am I missing? What other aspects of the interface control device does column 17... Is there another portion of the patent that I'm missing other than column 17? Line roughly 24-ish? Yeah? Column 17 describes the interface control device. The interface control device is this entire thing shown in figure 19. Yes, I know it's 910. I know how to read a patent. Where is the language about the particular functionality? Because remember, under B. Braun, you have to link the structure to the functionality. And the court found... Where is it? Where's that language? In the patent. I don't want to know what the court found. I want you to tell me where it is in the patent. Your Honor... Because it's right there. That's the only place it is. And the only thing it talks about is it links the configuration registers. And you don't like it, but that's the truth. Your Honor, you're taking the configuration registers... I'm doing what? You're taking the configuration registers out of column 15, but that is part of the discussion of the interface control device. And it's the interface control device that is the means for mediating that routes this data. No, that's not what that paragraph says. The paragraph says, the data stored in the configuration registers establishes operating characteristics of the interface control device, in particular, yada, yada, yada. That is the only place where the function in the claims is linked to any structure at all. Your Honor, the judge did not... The district court did not hold, pre-trial, that the configuration registers were the corresponding structure. He didn't. Yeah, I don't agree with you. And more importantly, Your Honor... How can you say that? I mean, he held... We had the figure. I mean, this is cleaner. I mean, sometimes we have to go to the structure and there are paragraphs with lots of language and lots of narratives, and we have to pull a structure out of that. Here we had a figure. The figure is the entire structure. And just like in... And can I just ask you as a sort of sideline to what the Chief was saying, in a related proceeding in this case, the judge held that this claim was not indefinite. And in that analysis, I can't recall exactly what it says, it essentially relied on the language and the spec, and all the stuff that they relied on had to do with the registers, right, the configuration registers. That was the basis for holding the claim not indefinite. In part, yes, it was. But that is not... Well, that's a tell, is it not? So, Your Honor, had the jury been instructed that configuration registers are the corresponding structure, I don't have a case. They were identified as part of the component of the corresponding structure. Are you suggesting that we should say, in an opinion, as a matter of black-letter law, that jury instructions on means plus function cases, where there's a corresponding structure, if there is a component that is either indispensable or important, or the other words that Turo uses, then they have to be there without equivalency. Are you suggesting that the error here is a legal requirement to put that... No, Your Honor, this is exactly the Odetics case.  No, but I guess, I'm sorry to interrupt, but I've asked you twice before, and maybe you've tried to answer and I just haven't absorbed it. How can you say it's inconsistent with Odetics? This claim construction is inconsistent with Turo, where the two are coming out of cases side by side. The specific inconsistency that we're complaining about here is that the jury instructions did not mention configuration registers or say that they were essential. And yet, on post-verdict... That's not an inconsistency, it may be an omission. You know, your body language showing the frustration with the questions is not appropriate. You're here to answer questions and you're supposed to do it in good nature. I absolutely apologize, Your Honor. Your Honor, the inconsistency, and it was an omission, and that's just what happened in Weiland and Hewlett-Packard. There was an inconsistency. What is our case law? Is our case law Odetics, Turo, and Solomon? Is there an inconsistency in those cases? Between those, no. What's inconsistent is my understanding of the case law, Your Honor, is that Turo and Solomon created a narrow exception to the Odetics rule. The Odetics rule is that when the court identifies a corresponding structure, it's the overall structure, and further parsing and individual components of that are generally not claim limitations, unless under Turo or Solomon they are indispensable. Okay, but you... Wait a second. Like 10 minutes ago, I pointed out your statement to that effect in the yellow brief and asked you to show me where in Turo it said it was a claim limitation. You couldn't do that and you gave up on the argument. Now you're reviving. I'm not saying that Turo is inconsistent. I believe that Turo and Solomon are wholly consistent with Odetics. I believe that they recite the narrow exception. Turo does not say that because something is indispensable it becomes a claim limitation. There is no language to that effect in Turo. You may have a situation here in which there is a missing instruction, but you're not in a situation in which there's a conflict between the instruction and what he did post-trial. The missing instruction is a further gloss, and Your Honor held, actually, in Hewlett-Packard, that the court on Jamal can't add more detailed claim construction than what was given to the jury instruction. But you're missing Cyprus and the obligation of the district court in a doctrine of equivalence and equivalence situation to look for evidence and linking argument. That's part of the district court's obligation. Isn't that what he was doing here? He did that pre-trial and found... Post-trial. He's supposed to do that post-trial. That's what Cyprus is. And that was recognized in Hewlett-Packard itself. Right, but what Hewlett-Packard and Weiland state, my understanding, is that Hewlett-Packard and Weiland stand for the proposition that if the jury instructions went in without objection, it is improper for the district court to add further detail to the claim construction that was not given. He told the jury to look at the patent. And as Judge Moore points out, the patent tells you that this is indispensable. Your Honor, respectfully, the jury was specifically instructed that individual components are not claim limitations. Unfortunately, I feel like we're in a never-ending loop and your time has long since expired, so let me move on to opposing counsel and I'll restore some of your rebuttal time. Mr. Richards? Before we get into... Oh, please proceed. Good morning, Your Honor. Oliver Richards on behalf of Apricorn. I think I can guess what your first question is. Before we proceed into the merits of the main issue here,  Is that a completely standalone issue that we need to resolve regardless of how the primary appeal gets resolved? I agree that there's the same claim construction order that was appealed from here regarding to their indefinite niche issue and there was a previous ruling on that. I think the court probably would need to address it. These are not consolidated cases, but if it wants to address it in a summarily fashion and otherwise affirm, we would obviously be fine with that as well. But you would be fine with what? That we would adopt, we would follow Western Digital and reverse or vacate the judge's determination of indefiniteness with respect to that claim, right? I mean, I'm not here to argue that this is a different issue. I continue to disagree. But the claims, right? The indefinite niche issue lies to different claims than the other issues we're talking about here. Correct. It's a different set of claims. We have to send the other claims back before we proceed. Should you all agree that Western Digital controls in this case, yes, you would have to send the other claims back, correct. Do you agree that it controls? I leave it to this court to determine that. I disagree with it. I would urge this court to look at the expert testimony. But you want us to contradict it? I don't expect you all to contradict it. Well, the other side said it's brief, so you didn't have time because it came down at a certain point. But don't you think if you really disagree that Western Digital has any applicability to these particular claims here, different than the ones we were talking about with Mr. Fenster, shouldn't you have sort of submitted a 20-J? They say it controls, and you're silent for four months. I don't disagree that it probably controls in this case. I will concede that it controls in this case. Okay, there we go. Thank you. And so at least that portion of the case, which is separate and distinct from the portion we were discussing with Mr. Fenster, would need a reversal or vacate. On that issue, yes. And those claims. Six and seven and 20, yes, correct. Thank you. So on to the issue that we've been discussing here. I want to kind of start off with the jury instruction. I do believe the jury was properly instructed. The language comes directly from Odetics. And what the jury was instructed was that they were to look at the way the claimed function is performed. And if we look at the patent, the way it's performed is through the configuration registers that program the device to mediate in a particular way. And the result, if we look at 11-279, that is exactly what the jury... But that's a problem. If you're now telling me the configuration registers are the structure that performs the claimed function, then isn't there a problem with the district court concluding that no, it was not the configuration registers, but rather the interface control device, all of what's in 910? I would disagree that it said it was the configuration registers divorced... Sorry, the interface control device divorced from the configuration registers. The disputed claim construction was whether there was adequate programming to tell the interface control device what to do. And if you look at Appendix 64, where it's part of the district court's opinion, where it provides the various constructions, the construction proposed by Apricorn was the interface control device 910 as programmed to mediate. So this was a central part of this dispute. And in the district court's claim construction order, he pointed specifically to the configuration registers as saving this term, at least in part, as my friend... Yeah, but if you're the jury, but the jury wasn't part of that. So the jury gets its instruction, which it takes very seriously, and it's got this figure 9b, and it has several components, including the register stuff. Are you suggesting that they would have known or intuited that this one thing, this register stuff, if that's not there, if they haven't shown that, then this case is over because that is indispensable? How would the jury have known to do that? And if they didn't really know to do that, is that okay, that's what we have jail law for, or is that a problem? I would say yes to both of those parts of that question. Yes, I think the jury should... If I were sitting on this jury and I read this instruction that asked me to look at the way that the structure is performing the function, I would look to the specification and say... Okay, where is the portion of the instruction? Walk me just through it. Where is the portion of the instruction that you think should have keyed the jury into the fact that configuration registers were critical? Well, sure, I would point you to 11.279. Hold on, let me get there. 11.279, do you know what line number by any chance? Yeah, I've got a line 14, starting on line 14. You must then determine whether the structure is the same or as or equivalent to the structure I've identified. If they are same or equivalent... Excuse me. Okay, now where is the structure he's identified? Apologies. I would point to, to amend my previous answer, lines 21 and 22. Specs must show the structure in the accused device performs the claimed function in substantially the same way to achieve substantially the same result. So I think that's the key critical language, and I would also point to... Yes, but you pointed us to the worst part for you, right? Which is what he says, and you don't get to identify what that structure is. I have. You have to follow my identification of the structure. Correct? That's what he told them. Correct. And what the district court identified was... Where is that? Interface control device 910. Where is that? What page? 11.276. 11.276. Okay, yep. So he said you have to find an equivalent to my identified structure, not whatever structure you perceive does it, but the structure I've identified. Okay, so where is the structure he identified? It's on lines 22 and 23. It is the interface control device 910 as shown in figure 9b. As you all know. They had the figure. They had the patent. They had the figure. Correct, and if you look at the figure, plainly on the figure are a number of different components, including the configuration registers. They have the specification, which explains this figure, and it explains that the configuration registers are what clearly link the function. I understand, but he didn't tell them. It was their obligation to figure out which portion of the specification or which portion of the interface control device is clearly linked to this function. In fact, that's plain construction, right? That's not part of the province of the jury. That part's the question of law, what the structure is that links. So that wasn't part of what he instructed them at any point to do. He said, I, me, it's my job to identify the structure. I'm telling you it's the interface control device, which is 910. It's your job, jury, now to see if they have something equivalent to 910. He didn't tell them. They got to dig deeper into the spec and see if there is some subcomponent in this structure that they believe is critical. In fact, he instructed them that they're not permitted to focus on subcomponents. I would disagree with that, and I'd point to 11280 right at the top, continuing from the previous part of the instruction. My friend on the other side talks about the overall structure, but he ignores the words that follow it. It's the overall structure corresponding to 24. 11280. 11280, okay. Right at the top, lines 1 and 2. Okay. He said what the claim limitation is is the overall structure corresponding to the claim limitation. And with respect to Odetics and Torum and Solomon, there is a sentence in Odetics. And he then goes on to say, further deconstructing or parsing is incorrect. And he told them, as a part of claim construction, what the overall structure corresponding to the claim function was, didn't he? He said the corresponding structure is this. Right. And then he instructed them, they were to look to the overall part of that structure that corresponds to the claimed function. And so if I were on the jury, I would ask, well, what part of this structure, what aspects of this structure, what is the overall structure that corresponds to the claimed function? I'm sorry, do you think that's part of claim construction and for the judge or for the jury? Do you think that's a question of law or a question of fact? I think the identification of corresponding structure is certainly a question of law. Right. So can juries decide questions of law? No. Not really. I mean, sometimes we give them things like, you know, for advisory verdicts or whatever, but not really. So if identification of the corresponding structure is a question of law, which you are right it is, and we have many cases that say that, that's for the judge to do. What he has the only, I don't see in any instruction to the jury anything about the words reconfiguration... Configuration registers. Configuration registers. I was like, I know I'm getting that wrong. I don't see anything to him, from him to them, to suggest that he's identified that particular component within the structure. I would agree that there's nothing in the jury instructions that calls out specifically the configuration registers. That's certainly apparently true. I think what short circuits this analysis some is there was a JML, but in addition to the JML, the district court allowed them to make an offer of proof to go beyond what the trial record was and to present additional evidence. So here's the problem. The short circuit is the JML. That has nothing to do with whether the jury had in front of it the right construction and whether he changed it in JML. So for me, cards on the table. Configuration registers are absolutely the structure that is clearly linked to the function. Column 17, I think I read the pattern right. That's where it is. Cards on the table. You cannot perform this function without configuration registers. That's the only thing that's linked, and you could theoretically, but that's what the spec links to it. That's what they have to have an equivalent of. I'm just stuck back at that first step, which is, is that really what he told the jury to do? I think that's the right thing to do, so you win on that for me. Boom, done. But I don't know what the right thing to do is for whether he actually communicated that to the jury. Sure. Well, to go back to Judge Froh's question from earlier, this is kind of the function of JML, is to decide whether the evidence presented at trial is legally sufficient to carry their burden. And here, if we look at the actual evidence, what they presented was this three-way interface, which in my view is nothing more than the function itself we recited. The function is mediating communicated data between a host computer, A. Okay, well, you're talking about the strength of the evidence. Can I bring you back to this jury instruction we were looking at, Mr. Fenster's argument, main argument of the inconsistency between this jury instruction, which is an important distinction, I think, which is whether it was just clarifying or whether or not there was an absolute inconsistency. And so the sentence is, the individual components, if any, I'm reading line 2425 of the 11279, of an overall structure that corresponds to the claimed function are not claim limitations. Is anything you're saying or any of the discussion about Toro and Solomon and indispensable, does that contradict the fact that none of them are claim limitations? No, Your Honor. If we look at what Odetics actually says, there's a sentence that says, the level of specificity required is exactly what it said out in the statute. It must be the structure that corresponds to the claimed function. And that is exactly, I think that's what Toro and Solomon followed up on with that language, is we have to look, and this is exactly what the jury was instructed. Look to the function I have told you, and then look to the structure and decide what structure. No, the jury was not instructed. Where was the jury instructed, look at the specification and determine what structure? Well, the jury was instructed. Were they? Were they instructed to that? Because that's what you just said. Not in hoc verba, no. And they shouldn't be, because that's a question of law. So we couldn't have, he could not have instructed them the way you just said, and he did not. Correct. It wasn't in hoc verba. Sorry, now I'm getting as upset as he was earlier. Apologies. But I will quote directly. It says, the claim limitation is the overall structure that corresponds to the claimed function. That's what the jury was instructed. No, the jury wasn't instructed that it had any role to play in determining what that structure was, though. The jury was instructed that he, as the judge, determined that. He told them what it was. I mean, there's buckets of case law from this court that talk about the required specificity for a claim construction. I think we can get into that, where, you know, the required specificity, and pass a certain point because, I guess, a question of fact. I think what the judge did here was satisfy what he was supposed to do, was to identify corresponding structure. Could he have, you know, in retrospect, could the jury instructions have been better? Certainly. Could the claim construction have been better? But there was no objection on their part to the jury instruction, right? Correct, Your Honor. And so, it may be that there was a missing jury instruction, but that is not a ground for setting aside a verdict if there was no objection to the instruction that was given. So, here we are in Jamewel, and the question is whether in Jamewel the district court could properly conclude that there was no evidence to support a verdict of infringement because of the indispensability of the configuration registers. That would seem to be the posture that we're in. Right, and I think that there's precedent from this court, and I'd point the court to Cordes, is I think one of our best cases on this subject. And I think Weiland actually supports us, but we'll talk about it. I see I'm running out of time. But Cordes says that a district court is able to clarify its construction after trial. And that's, you know, to the extent there was any change. I don't believe there was a change. It was the same before and after. But the district court simply clarified what its construction was, and then looked to the evidence, and then allowed them to make an offer of proof beyond even what they presented at trial. Well, I think you'd be in trouble if the jury here could properly have found infringement based on the record that it fits. But my understanding of your argument is that Jamewel is appropriate because the jury couldn't find infringement under the record that exists. Correct. And I think what was presented by their expert, and I see that I'm out of time, so I'll just briefly answer this question, but I'm happy to answer any other questions. But I'll just briefly say what the evidence that was presented was insufficient on a legal basis. They presented a three-way interface. They didn't discuss the way that was sufficient. Well, that's what I was just going to ask you. I'm sorry to interrupt. But, I mean, the jury was instructed that they have to determine whether the structure performed the recited function in substantially the same way. So if on Jamewel we hadn't gotten into the indispensable and all of this stuff, the judge just looks at the legal record and says that they could not, as a matter of law, have established that this does it substantially the same way given what the structure is, right? I think that that's analogous to what the court did here because the way the specification tells us it does this configuration, sorry, the way it tells us it does this mediation is through the structure as programmed by the information in the configuration registers. And substantially the same way, there was a failure of proof to show that without the configuration registers this functions in substantially the same way, right? Correct, Your Honor. I would agree. And if you look at the evidence they offered, it was this three-way interface. There was no discussion of the way the alleged three-way interface in the accused products was configured in any way. And they focus on these three lines of testimony here, but all they say is that it is capable of being configured. Of course. Yeah. Just as an aside, and Mr. Fenster raised this too, Hewlett-Packard, I mean, everybody's got their two cases or whatever going different ways. And I mean, I think Hewlett-Packard, the situation there is demonstrably different than this. I think there was a real absolute change, a contradiction in the claim construction. But there's no case that calls out at me. I mean, you have to sort of, court, this is your case, or M formation. But they're all a little different. I mean, I think, would we be saying something new and different? Doesn't this present kind of a particular peculiar fact situation that would mean to say something a little different, maybe more, maybe less, than the prior case law has articulated? I would say that there's certainly no case that either party has cited that is exactly on point. I think Cordes is the closest case to what happened here. But I don't think there's anything extraordinary about looking to the legal sufficiency of the evidence presented at trial on a legally complicated issue, like a means plus function equivalency, and say what was presented at trial was legally insufficient. And I think that's what the district court did here. They looked at the way, they looked at the configuration registers and said that is the way that's disclosed. There was no evidence to that point. So I don't think there's anything unusual or requires any sort of stretch to say that the evidence presented at trial was legally insufficient. Okay, thank you, counsel. We will restore Mr. Fenster's full four minutes of the bubble. Thank you. Thank you very much, Your Honors. I have two primary points. First, I do believe that it was an omission. I believe that the jury was not instructed anything about configuration registers. So even if you don't find that it's inconsistent, it was an omission that this court has found in Hewlett-Packard and Wyland that it's too late for the JMAL to supplant. And if you do add that jury instruction, then it needs a new trial. Now, HP and Wyland both stand for the proposition that you have to judge the sufficiency of the evidence by the jury instruction actually given. There was sufficient evidence of configuration registers here. And the district court... Well, that's the key, right? If there wasn't evidence of configuration registers, it wouldn't allow the jury to find that it was a configuration register. So, yes, I think that there clearly is sufficient evidence drawing all inferences in favor of the verdict. But you agree that if there was not sufficient evidence for the jury to find a configuration register in the accused product, you lose. I actually disagree with that, Your Honor, respectfully, because the jury was not so instructed and... But you never asked to have them instructed either, right? We didn't object to the instruction. We were fine with Odetics, and we prevented sufficient evidence as to the overall structure. But let me go through the sufficient evidence of configuration registers, because I see that's where the court is. May I? So, Younggren testified by deposition, this is at Appendix 9708, 9709, and 9719, specifically that configuration registers are in the accused device. Yeah, but he said that accused devices as a whole have configuration registers. He didn't stick them inside any kind of interface control device. Let me go through, and remember, Your Honor, that this is... We're testing the sufficiency of the evidence where you have to draw all inferences in favor of the verdict. Yeah, but it has to be the corresponding structure performing the corresponding function. Okay. So, Mr. Koh testified that bit registers are used to disable AES encryption, and that is at Appendix 9731 to 9732, and, again, at 9696 to 9697. Now, Mr. Gomez, the expert, specifically testified to configuration registers in the accused devices that correspond to the structure. This was the INIC 3607 chip and the 1861 bridge chip. So, he did this at... This is at 97... He's talking about a USB register. He doesn't map it. So, you're... Okay, so, Your Honor, if you look at 9743... Okay, I read your case. You know, I'm in. I'm all in on this one. Okay, so, Your Honor, the way this interface control device works, there's a host interface, and the host interface in ICD was PCMCIA, right? And in the accused device, it was USB. But the configuration registers belong to that host interface, the PCMCIA, okay? The host interface. And he drew... He showed the jury that the USB interface in the accused devices is the same, structurally equivalent, and that's at 9743, okay, which was his demonstrative. And his testimony on this is at 10668 to 673. Do either Mr. Gomez... I'm sorry, Mr. Gomez or Dr. Jones offer testimony to the extent that the USB register is what performs that claimed mediating function? So, yes. So, one, Mr. Koh said that the bit registers are used to disable AES encryption. Disable AES encryption means you turn off the security function, meaning it no longer must pass through, or it passes through. Similarly, Mr. Jones testified that the USB uses configuration registers, and then at appendix 12138, this is the demonstrative of the 3607 chip, and Mr. Gomez testifying about it is at appendix 10684, where he says that line is a USB register access, and it's not available if AES is enabled. So, what he's saying is that these bit registers... So, there's evidence that there are configuration registers in the devices. Bit registers turn off encryption. I want to help you. I want to answer your question, Judge Moore. So, what are you... So, one, we weren't specifically told by the judge, and the jury instruction weren't specifically told that you have to show specifically configuration registers. But we did show configuration... And remember, configuration registers are not the corresponding structure here as instructed. You may have a different view, and you may change the claim construction and send it back with a new claim construction, which would warrant a new trial. But the jury was not instructed that configuration registers are the corresponding structure that perform the function. Rather, they were instructed that it's the ICD, the interface control device, as shown in 9B. Of which configuration registers are a component. Yes, and what column 17 says, Your Honor, is that... So, this is mediating, you've got a host interface, security, and target. And what the ICD is, this single component that interfaces all three that is capable of routing the data through the security. And what column 17, Your Honor, says is not that the configuration registers do it. Configuration registers are just a place to hold bits. Yes or no. One or zero. What that configuration register does to one of skill in the art, is tell the ICD how to route that data within that three-way interface. Do you route it to security, or do you route it directly to the target? And so, I believe that the district court was correct in finding that the ICD is the proper corresponding structure. That was the instruction, the claim construction... So, I'm going to have to call it closed. I thank both counsel for their arguments. This case is taken under submission. Thank you, Your Honor.